[Crim. No. 11894.    Second Dist., Div. Four.    July 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOE CHARLES WALTERS, Defendant and Appellant.

Joe Charles Walters, in pro. per., Charles M. Berg, under appointment by the Court of Appeal, Donald F. Roeschke, H. Clay Jacke and Roy L. Crowell for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Marjory E. Winston, Deputy Attorneys General, for Plaintiff and Respondent.

FILES, P. J.—Appellant and his codefendant (not a party to this appeal) were tried by a jury and convicted of three counts of armed robbery (Pen. Code, § 211). This appeal is from the judgment.

The evidence pertinent to the issues on appeal will be summarized.

Mrs. Dolores Widgins testified that about 2:30 p.m. on December 11, 1964, appellant and his codefendant, entered the office of the Southern California Gas Company where she was employed. Appellant said he was applying for gas service. In response to Mrs. Widgins' questions he said his address was 1113 East 117th Street, his previous address was 10921 South Figueroa, and that his wife was employed at the Sally Shop. While Mrs. Widgins was writing, the codefendant produced a gun and said, " 'Sweetheart, don't move, just keep quiet.' "

Mr. Krueger, a gas company employee, was standing in the doorway between the front room and the rear room. Another employee, Mrs. Shand, was in the rear room. Appellant ordered Mr. Krueger and Mrs. Shand into the front office, where the codefendant stood with his gun. Appellant then removed money from Mr. Krueger's cash drawer and from Mrs. Widgins' purse and the purse of Mrs. Shand.

Mrs. Widgins was positive in her identification of the robbers. For sometime before the robbery she had been watching appellant as he loitered on the sidewalk outside her office window.

The prosecution also produced a police officer who testified, over objection, that he had interviewed appellant while he was under arrest on October 22, 1964, some six weeks prior to the robbery. In this interview appellant had said that his wife's address was 10921½ South Figueroa, that his father's address was 1113 East 107th Street, and that his sister was employed at Sally's Dress Shop.

Appellant, testifying in his own behalf, denied any part in the robbery. He said he had spent the entire day in the office of the Landlord-Tenant Service at 82d and Broadway where he said he was employed. His testimony was that he had first worked there part time in October and had worked there regularly during December 1964.

Appellant's wife, called as a defense witness, testified that she and appellant had formerly lived at 10921 South Figueroa and that his sister had worked at Sally's Dress Shop.

In rebuttal, the prosecution called an investigator attached to the postal service who had interviewed appellant on December 2, 1964, while he was in custody awaiting arraignment before a United States Commissioner. The witness testified, over objection, that in order to fill out a personal history report, he had asked appellant his place of employment.

Appellant had replied that he worked for the Los Angeles Nut House as a spot welder in September and October 1964, and after that for Walters' Auto Wreck, 1205 South Central, but appellant did not mention the Landlord-Tenant company of 8225 Broadway.

Appellant argues here that the prosecution's evidence is inherently incredible because a person committing a robbery would not be foolish enough to give his own address. This was an argument for the jury to consider when it weighed the evidence. Upon this record, the jury may well have concluded that poor judgment was characteristic of a man who would commit this kind of a holdup. It is a permissible inference that appellant failed to plan in advance his dialogue with Mrs. Widgins, and when confronted with her questions, he responded with the first addresses which came to mind.

Judged by the standards which govern appellate review of factual issues, the evidence is unquestionably sufficient. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Appellant also contends that the statements which he gave to the police officer in October and to the postal inspector on December 2, 1964, were inadmissible under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. That authority (at pp. 353-354) requires the exclusion of an extrajudicial statement when "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights."

The burden is upon the prosecution to show that a defendant's extrajudicial declarations are not subject to exclusion under this rule. (*People* v. *Davis,* 66 Cal.2d 175, 180 [57 Cal.Rptr. 130, 424 P.2d 682].) Here the record shows the fact of custody, the nature of the questions asked and the answers elicited. These questions and answers all relate to personal identification. This kind of background information ordinarily is sought for purposes other than to incriminate the declarant. It is generally to the best interests of a prisoner that his address and those of his near relatives be on record.

In *People* v. *Stout,* 66 Cal.2d 184, 196-197 [57 Cal.Rptr. 152, 424 P.2d 704], officers arrested and interrogated a Mrs.

Culp, who at first refused to disclose her identity. The officers asked questions that ''were of the nature which called for the identification of and relationships between the suspects and the personal property involved, and an opportunity to explain away the strange conduct in connection with the blue bag.'' The court said that under the circumstances there presented, ''we are persuaded to the conclusion that the police were not carrying out a process of interrogations that lent itself to eliciting incriminating statements.''

In the case at bench the questions asked were far short of the inquiry made in *Stout*, for here there is no evidence that the police went farther than to ask for routine identifying information. Upon this showing the trial court reasonably concluded that this was not a forbidden ''process of interrogations.''

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 27, 1967.