153 N.J. Super. 350 (1977)
379 A.2d 860
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BRUCE CUNNINGHAM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 1977.
Decided October 24, 1977.
*351 Before Judges BISCHOFF, KOLE and GAULKIN.
Mr. Burrell Ives Humphreys, Passaic County Prosecutor, attorney for appellant (Mr. Dante P. Mongiardo, Assistant Prosecutor, on the brief).
Messrs. Diamond, Diamond & Afflitto, Pool Attorney for the Public Defender, attorneys for respondent (Mr. Joseph T. Afflitto, of counsel and on the brief).
PER CURIAM.
The State appeals, pursuant to leave granted, from an order of the trial judge suppressing evidence as having been obtained as a result of an improper custodial interrogation in violation of defendant's constitutional privilege against self-incrimination.
Defendant was a suspect in a carnal abuse case and, at the police station, was given warnings by a detective consistent with the principles expressed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was then asked if he understood the warnings, to which defendant answered he "did and wished to remain silent." Thereafter, the detective asked defendant where and with whom he was living. Defendant responded with the name of his girlfriend and her address. Under cross-examination at *352 the Miranda hearing, the detective testified he wanted to know where defendant lived so he could continue his investigation. He further testified that when he asked the question he intended to go to the address to look for and obtain specific items of evidence.
The detective went to the address given by defendant and seized articles for use as evidence. At the conclusion of the Miranda hearing the evidence thus obtained was suppressed. The trial judge ruled that, while generally questions as to name and address were proper for ministerial purposes such as booking or bail purposes without prior Miranda warnings, such questions violated defendant's constitutional rights in this case because it was the expressed intent of the detective to use the information thus obtained to continue his investigation. The evidence was suppressed because it was "the fruits of a violation of defendant's right to remain silent under the rule of the Miranda case."
Routine questions asked during the booking process or for bail purposes are generally held to be ministerial in nature and outside the privilege against self-incrimination. People v. Rivera, 26 N.Y.2d 304, 310 N.Y.S.2d 287, 258 N.E.2d 699 (Ct. App. 1970); State v. Rassmussen, 92 Idaho 731, 449 P. 2d 837 (Sup. Ct. 1969); United States v. LaVallee, 521 F.2d 1109 (2 Cir.1975), cert. den. Hines v. Bombard, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976); Commonwealth v. Allen, 239 Pa. Super. 83, 361 A.2d 393 (Super. Ct. 1976); State v. Jordan, 506 S.W.2d 74 (Mo. Ct. App. 1974); Clarke v. State, 3 Md. App. 447, 240 A.2d 291 (Ct. Spec. App. 1968).
The trial judge recognized this rule but held that, since the testimony of the detective indicated an intent to use the information obtained from such innocuous questions in order to continue his investigation, it was improper to ask them. He applied a subjective test and, in doing so, we conclude that he erred. The test to be applied in determining whether custodial interrogation has occurred is well stated by the California Supreme Court in People v. Stewart, 62 *353 Cal.2d 571, 43 Cal. Rptr. 201, 400 P.2d 97 (1965), aff'd Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), as follows:
The test which we have described does not propose a determination of the actual intent or subjective purpose of the police in undertaking the interrogations but a determination based upon the objective evidence. Whatever may be the subjective intent of the interrogators, we must, in order to determine if the police are carrying out `a process of interrogations that lends itself to eliciting incriminating statements' [citation omitted], analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances. [43 Cal. Rptr. at 206, 400 P.2d at 102]
This is substantially the test adopted and applied in New Jersey. In State v. Barnes, 54 N.J. 1 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970), the police stopped a car in which defendant was riding, arrested and searched her. They were looking for stolen checks and defendant had none on her person. During a cursory search of the car in which defendant was riding, the police saw checks on the floor of the car and asked, "Whose stuff is this?" Defendant responded that the checks were hers. The court held that the question and defendant's answer, given prior to Miranda warnings, was admissible. In holding that defendant had not been subjected to interrogation, the court said:
What was comprehended by Miranda was a process of "custodial interrogation" which the Supreme Court found to be inherently coercive. The single question asked in this case was not part of the investigation which led to the defendant's apprehension, nor was it one of a series of investigatory queries. Most important, it was not the type of question which centered blameworthiness on the defendant. She could have attributed possession to anyone, or no one, in answer to the question directed to her. After all, there were three other occupants in the car. [54 N.J. at 6.]
The same rule was applied in State v. Johnson, 106 N.J. Super. 295 (App. Div. 1969), rev'd, dissent adopted, 55 *354 N.J. 331 (1970). See also, Mills v. State, 28 Md. App. 300, 345 A.2d 127 (1975), aff'd 278 Md. 262, 363 A.2d 491 (Ct. App. 1976).
The intent or purpose of the detective in asking the questions of a defendant may be material in making a determination as to whether the defendant has been subjected to custodial interrogation in violation of his constitutional rights, but is only one of the factors to be considered in analyzing the total situation surrounding the questioning. Such an issue is to be resolved by a consideration of all the circumstances involved.
We hold that, under the circumstances present here, the information sought by the detective as to defendant's address and the name of the person with whom he was living was ministerial in nature and outside the constitutional protection afforded against self-incrimination. It follows that it was error to suppress the evidence obtained in a search of the home where defendant was living as the "fruits of an improper custodial interrogation," and the order doing so is reversed.
Reversed.